IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Perry Lawrynkiewicz**<br>c/o Laffey, Bucci & Kent<br>1100 Ludlow Street, Suite 300<br>Philadelphia, PA  19107<br><br>           Plaintiff,<br><br>    v.<br><br>**CITY OF PHILADELPHIA**<br>1400 John F. Kennedy Boulevard,<br>Philadelphia, PA 19107<br><br>**CTIY OF PHILADELPHIA FIRE DEPARTMENT**<br>240 Spring Garden Street, Philadelphia, PA 19123<br><br>**ADAM K. THIEL**<br><br>**RICHARD BROWN**<br><br>**JAMES STINSON**<br><br>           Defendants. | CIVIL ACTION NO. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Perry Lawrynkiewicz, by and through his undersigned counsel Laffey, Bucci & Kent LLP, hereby brings the following Complaint before this Honorable Court and avers the following in support thereof:

## JURISDICTIONAL STATEMENT

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil action to recover

damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

2. This Court has supplemental subject matter jurisdiction over all related state claims herein pursuant to 28 U.S.C. § 1367, which gives federal district courts jurisdiction over all other claims related to claims in the action by which the Court has original jurisdiction that are arising out of the same case or controversy under Article III of the United States Constitution.

3. Plaintiff brings this action to redress a hostile work environment wherein Plaintiff was subject to harassment, discrimination, and retaliation. Plaintiff has standing to bring forth his claim pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*

4. Plaintiff invokes the supplemental jurisdiction of the Court, pursuant to 42 U.S.C. § 1367, for his claims under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951–963 and the Philadelphia Fair Practices Ordinance. Plaintiff invokes the Court's pendent party jurisdiction over Plaintiff's claims against the individual defendants under 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside in this district and the events giving rise to the claims occurred in this district.

## PARTIES

6. Plaintiff, Perry Lawrynkiewicz, is an adult male who was at all relevant times and is still currently employed by the City of Philadelphia as a firefighter in the Fire Department of the City of Philadelphia. Mr. Lawrynkiewicz is a resident of the City of Philadelphia. Plaintiff was wrongfully discriminated against and harassed on the basis of his disability and/or perceived disability and then retaliated against for reporting such behavior.

7. Defendant, City of Philadelphia ("Philadelphia" or "City"), is a municipal corporation, employer, and City of the First Class organized and existing under the laws of the

Commonwealth of Pennsylvania, which maintains its principal offices at 1400 John F. Kennedy Boulevard, Philadelphia, PA 19107.

8. Defendant Fire Department of the City of Philadelphia ("the Fire Department") is in operated by the City and is in charge of fire safety, fire prevention, emergency medical services, firefighting, and other functions relating to fire and emergencies in the City. The Fire Department maintains its principal offices at 240 Spring Garden Street, Philadelphia, PA 19123.

9. Defendant Adam K. Thiel ("the Commissioner" or "Commissioner Thiel" or "Defendant Thiel") was at all relevant times the Fire Commissioner for the City of Philadelphia. Commissioner Thiel is being sued both individually and in his official capacity as an officer, agent and/or employee of the defendant, City of Philadelphia.

10. Defendant Richard Brown ("Lt. Brown" or "Defendant Brown") was at all relevant times a lieutenant in the Fire Department and was Plaintiff's direct supervisor. Lt. Brown is being sued both individually and in his official capacity as an officer, agent and/or employee of the defendant, City of Philadelphia.

11. Defendant James Stinson ("Captain Stinson" or "Defendant Stinson") was at all relevant times a captain in the Fire Department and also acted as Plaintiff's supervisor, above Lt. Brown in the Fire Department chain of command. Captain Stinson is being sued both individually and in his official capacity as an officer, agent and/or employee of the defendant, City of Philadelphia.

12. At all times relevant hereto, the Defendants City and Fire Department were acting by and through their duly authorized actual and/or apparent agents, servants and employees, including Lt. Brown and Captain Stinson, who were acting within the course and scope of their

actual and/or apparent agency and/or employment with the City and Fire Department, for whom each Defendant is vicariously liable under Pennsylvania law.

## FACTUAL HISTORY

13. At all relevant times, Plaintiff, Perry Lawyrnkiewicz, worked as a uniformed employee of the Philadelphia Fire Department. Plaintiff has been employed by the City of Philadelphia as a firefighter since 2003.

14. Plaintiff was assigned to Engine 58, B Platoon, at 812 Hendrix Street, Philadelphia, PA 19116.

15. Throughout his many years of service, Plaintiff received stellar performance reviews. His supervisors consistently rated him "superior" in all applicable categories and commented favorably on his abilities and the quality of his work.

16. Performance reviews and the information contained therein are important tools and/or metrics utilized by the Fire Department to evaluate employees' qualifications for promotions, raises, and other compensatory benefits affecting the terms and conditions of their employment.

17. In March of 2019 Plaintiff suffered a heart attack. He underwent a period of hospitalizations, a surgery implanting a stint in his heart, and had a five-month absence from work.

18. Per City policy and Fire Department directive, if an employee was out of work for an extended period of time due a medical condition, that individual first must be cleared by multiple doctors before attending the Fire Academy for two tours—approximately eight days—before returning to his or her Engine. Plaintiff complied with these policies and directives.

19. In fact, Plaintiff followed all appropriate procedures relating to his employment and his medical condition, but for a brief period, Plaintiff was limited in the scope of his abilities.

Therefore, Plaintiff qualifies as "disabled" under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12102, the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 954(p), and the Philadelphia Fair Practices Ordinance, Phila Code § 9-1102(i).

20. Plaintiff's limitations were acknowledged and accepted by the Fire Department, particularly because he was still able to perform the essential functions of his employment and due to his extensive experience and value as a team member.

21. Plaintiff returned to work in September 2019 and assumed the full duties of his position as a firefighter without limitation.

22. On or about October 28, 2019, Lieutenant Richard "Rick" Brown ("Lt. Brown"), Plaintiff's direct superior and supervisor, wrote a scathing, untrue, discriminatory and damaging employment review about Plaintiff directly related to Plaintiff's disability. In the false review, Lt. Brown referred to Plaintiff's medical history and condition, which he published and disseminated to other non-administrative personnel. This review contained statements such as:

> I understand that your medical condition has caused you to stare your mortality in the eye, but maybe its [sic] time to decide being a firefighter is not the direction you want to pursue . . . . [M]yself and your peers have begun to lose confidence in your ability to perform at maximum efficiency in an actual emergency . . . . I am looking for the minimum standards associated with being an average Firefighter . . . . It has been my goal every day to inspire members I work with to achieve these standards, but it is obvious that you have not grasped these qualities . . . .

23. This review unfairly and unlawfully targeted Plaintiff's disability, record of disability, and/or perceived disability as a basis for his supposed employment shortcomings. Plaintiff was singled-out by Lt. Brown because of his disability and made the target of a slanderous review meant to cause Plaintiff reputational and vocational harm.

24. In addition to the harm inherent to this document, Lt. Brown then distributed it so that it was seen by all members of the Fire Department in violation of Plaintiff's medical and

personal privacy and Fire Department directives. He even left a copies of this report out in the open at the station so anyone could see and read it.

25. Lt. Brown's superior, Battalion Chief Dennis Philipp ("Chief Philipp"), notified Plaintiff that this performance review was being inappropriately circulated. Plaintiff informed Chief Philipp that he wanted to make an official complaint with the Fire Department due to Lt. Brown's behavior, which was done by Chief Philipp in late October 2019.

26. On or about November 1, 2019, Lt. Brown created a revised performance report for Plaintiff which eliminated reference to his medical condition and disability but, in substance, was the same as his original inaccurate evaluation of Plaintiff's qualities and abilities.

27. On or about November 17, 2019, Lt. Brown called Plaintiff into his office to give him the revised, but still false, performance report. In this meeting, Lt. Brown said that the report meant "nothing" and he did not know why Plaintiff was so "up in arms" about it. Plaintiff incredulously asked Lt. Brown how the report meant "nothing" and then refused to sign the revised evaluation. Lt. Brown also stated that he was not worried about Plaintiff's official complaint against him regarding the original report and informed Plaintiff that he could have added additional negative things about Plaintiff's performance, but did not.

28. Over the next several weeks, Plaintiff was subjected to harassment, bullying, hostility, and other discriminatory behavior from Lt. Brown and others in the Fire Department, which caused Plaintiff to experience severe anxiety and impacted his mental, emotional, and psychological well-being.

29. Lt. Brown's false and damaging reviews were eventually withdrawn and replaced by Chief Philipp shortly after the creation of Lt. Brown's revised report with a new and accurate review that called Plaintiff a "vital asset." However, this corrected and truthful report was never

disseminated to the other Platoons who had received Lt. Brown's original false and damaging report.

30. In November or December of 2019, Chief Philipp informed Plaintiff that he had spoken to a Deputy Chief in the Fire Department about Lt. Brown's behavior. Chief Philipp relayed that this Deputy Chief said that Lt. Brown should not be assigned to same station as Plaintiff anymore.

31. Further, it was communicated to Plaintiff that Lt. Brown would be subject to disciplinary action and transferred as a result of his discriminatory review and harassing conduct thereafter. However, no such action was taken by the Department at this time.

32. Despite being assured that he would not have to work with Lt. Brown again due to his behavior, on or about December 26, 2019, Lt. Brown was assigned to be Plaintiff's commanding officer. Plaintiff informed Chief Philipp that he could not work under the supervision of Lt. Brown because of the demeaning and hostile actions of Lt. Brown with regard to Plaintiff's disability. Chief Philipp detailed Plaintiff to the Employee Assistance Program ("EAP") for the day to accommodate Plaintiff.

33. On or about February 27, 2020, Lt. Brown was again scheduled as Plaintiff's commanding officer and Plaintiff was forced to work under him. During a medical run, as Plaintiff was approaching the address for the call, Lt. Brown yelled at Plaintiff that the address was down the street. Plaintiff explained he was slowing down to avoid a tree limb that was hanging over the street.

34. Back at the station, Lt. Brown continued to reprimand Plaintiff in front of the entire platoon, saying "You need to take it easy in front of everybody." When Plaintiff asked what Lt. Brown meant by that, Lt. Brown said Plaintiff missed their target address by a block. Plaintiff

again explained that he slowed down to avoid a tree limb, but Lt. Brown proceeded to mock and laugh at Plaintiff.

35. On or about March 6, 2020, Captain Philipp informed Plaintiff that the Fire Department's special investigation office was bringing Lt. Brown to their office the following week regarding the defamatory and discriminatory false review and that Lt. Brown was made aware of that fact. Additionally, Lt. Brown was informed that his overtime was to be earned at another station than Engine 58. Moments later, Lt. Brown walked by Plaintiff and said, "You are a mouse of a man." Plaintiff did not engage Lt. Brown. Rather, Chief Philipp asked Plaintiff to memorialize what happened in a memorandum, which Plaintiff did. Chief Philipp then sent Plaintiff's memo to a Deputy Chief.

36. At the end of that same day, Captain Jim Stinson of the Fire Department approached Plaintiff at his locker as he was getting ready to leave. In front of other firefighters, Captain Stinson asked, "Is there going to be a problem with you when Lt. Brown works overtime with you for the whole next year that he is here?" Captain Stinson said he had been receiving calls all day from Lt. Brown about Plaintiff. Captain Stinson then mocked Plaintiff by saying, "Are you going to run to the Chief all the time that we have Lt. Brown working with you?" When Plaintiff tried to defend himself, Captain Stinson began criticizing Plaintiff's on-the-job performance, claiming untrue things in a further attempt to bully and/or intimidate Plaintiff. As Captain Stinson was mocking and maliciously taunting Plaintiff, Chief Philipp came out and ordered Captain Stinson into his office.

37. Despite the fact that the Fire Department investigated and charged Lt. Brown with violations of department directives, the only disciplinary action taken against Lt. Brown by the

Fire Department for his months-long discrimination and harassment of Plaintiff was a 24-hour suspension.

38. Even after Lt. Brown's suspension, the Fire Department continued to schedule Lt. Brown as Plaintiff's commanding officer on multiple shifts, forcing Plaintiff to volunteer to be detailed to another station to avoid being bullied, humiliated, and harassed by Lt. Brown and others, including Captain Stinson.

39. As a result of the severe and pervasive discrimination, hostility, and retaliation Plaintiff was subjected to by Lt. Brown, Captain Stinson, and others in the Fire Department, and the City and Department's own deliberate indifference towards such conduct, Plaintiff suffered and continues to suffer severe emotional stress, mental anguish, anxiety, embarrassment, humiliation, loss of life's pleasures, both past and future, and other psychological injuries, as well as physical manifestations of his psychological injuries as a result of Defendants' actions and inactions.

40. Defendants' discrimination against Plaintiff has caused him pain and suffering in forms including, but not limited to:

   a. Loss of his faith and pride in the Department to which he had dedicated his adult life;

   b. Loss of the pride and self-esteem engendered by his service as a firefighter;

   c. Constant fear of reprisal for trumped-up infractions;

   d. Being humiliated in the eyes of firefighters and officers; and

   e. Loss of enjoyment of life with relatives and friends.

41. On December 8, 2020, Plaintiff filed a timely complaint of disability discrimination and retaliation against the City of Philadelphia and the Philadelphia Fire Department with the

Pennsylvania Human Relations Commission ("PHRC"). Plaintiff's PHRC complaint is numbered 202001374.

42. In January of 2021, after the City of Philadelphia and the Philadelphia Fire Department received Plaintiff's PHRC complaint, Lt. Brown was finally transferred out of Plaintiff's station.

43. Shockingly, in the fall of 2021, on information and belief, Captain Stinson instructed another lieutenant, Lt. Joseph Fyke, to write a performance review for Plaintiff and then egregiously forge Plaintiff's signature without ever showing Plaintiff the report or providing him a copy of it. This matter was investigated by the Human Resources office of the Fire Department and it was confirmed that Plaintiff's signature was forged.

44. Unlawful retaliation against Plaintiff meant to cause him emotional, reputational and vocational harm therefore continued even *after* the commencement of Plaintiff's PHRC complaint against the Defendants.

45. On or about February 18, 2022, the PHRC sent Plaintiff a letter administratively closing Plaintiff's PHRA Complaint and instructing him of his right to file the instant lawsuit pursuant to 43 P.S. § 962(c)(2).

46. Plaintiff has therefore satisfied his administrative prerequisites under the PHRA by filing a timely complaint of discrimination, receiving an administrative closure letter, and filing in this Honorable Court within two years of receiving that letter.

47. Plaintiff has suffered and continues to suffer severe emotional and reputational harm as a result of the adverse actions of Defendants, which are still ongoing.

## CASUSES OF ACTION

### COUNT I
### HOSTILE WORK ENVIRONMENT / HARASSMENT AND RETALIATION VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12101, *et seq.*

48. Plaintiff incorporates by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

49. The Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, provides, in relevant part, that no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

50. The City of Philadelphia and the Fire Department are employers and fit the definition of covered entities pursuant to the ADA.

51. Plaintiff is protected under the ADA, to wit:

   a. Plaintiff has an actual physical impairment in that he suffered a heart attack and had to have a heart stent implanted, which substantially limited his major life activities of walking, lifting, climbing stairs, sleeping, and caring for himself.

   b. Plaintiff has a record of disability in that he suffered a heart attack and had to have a heart stent implanted, which caused him to endure months of medical treatment and miss approximately five months of time at work. During that time, Plaintiff was physically limited in that he had difficulty walking, lifting, climbing stairs, sleeping, and caring for himself. Thus, Plaintiff has a history of physical impairment that substantially limited one or more of his major life activities;

      c. Plaintiff was perceived or regarded by Defendants as disabled in that he suffered a heart attack and had to have a heart stent implanted, which caused him to be treated differently, as having a substantially limiting impairment, by the Defendants.

52. Plaintiff was discriminated against in that he was subjected to a hostile work environment and harassment based on his disability and/or perceived disability, which was severe or pervasive enough to alter the conditions of Plaintiff's work environment, and make it more difficult to do his job, to wit:

      a. Lt. Brown authored a false performance report of Plaintiff's qualifications and abilities of which Plaintiff's medical condition was the basis for such defamatory remarks;

      b. This false performance report unlawfully discriminated against Plaintiff for his disability and/or perceived disability;

      c. This false performance report was to be used as a metric for Plaintiff's advancement and compensation in the Fire Department and therefore was intended to adversely affect Plaintiff's employment conditions and opportunities;

      d. This false performance review was then improperly circulated to the entirety of the Fire Department, in violation of Plaintiff's privacy and Fire Department directives;

      e. This false, discriminatory, and defamatory report and its improper circulation amongst the Department also adversely impacted Plaintiff's employment

conditions and/or opportunities and caused him reputational, mental, and emotional harm.

53. When Plaintiff rebuffed and complained about Lt. Brown's conduct, therefore opposing his discriminatory actions, it led to further harassment, intimidation, bullying, and mistreatment from agents, servants, and employees of Defendants, which was both severe and pervasive, and adversely impacted Plaintiff's employment conditions and/or opportunities.

54. In fact, after Plaintiff complained about the discrimination and harassment, including to Chief Philipp in or around October 2019, the harassment did not stop, but rather escalated, causing Plaintiff to suffered retaliation, to wit:

    a. Lt. Brown repeatedly mocked and harassed Plaintiff after Plaintiff made a complaint against him;

    b. Lt. Brown repeatedly berated, ridiculed, and attempted to humiliate Plaintiff in public settings and/or in front of other members of the platoon;

    c. Lt. Brown fabricated reasons to chastise Plaintiff in an effort to undermine Plaintiff's aptitude, credibility, and stature in the eyes of his fellow firefighters;

    d. The Fire Department, after assuring Plaintiff that he would not have to work alongside Lt. Brown lest he face further harassment, failed to take that remedial action and instead subjected Plaintiff to a hostile work environment wherein Plaintiff was made to feel "less than" simply for opposing Lt. Brown's unlawful discrimination against him;

    e. The Fire Department, in failing to ameliorate the harassment Plaintiff was subject to by Lt. Brown and others, forced Plaintiff to volunteer to detail himself

   to other units in order to avoid harassment, thus materially altering the terms and conditions of his employment;

f. When Lt. Brown was called into the Fire Department's special investigations office for his discriminatory actions against Plaintiff and learned that he would have to serve overtime shifts at another fire station, Lt. Brown insulted Plaintiff, calling him a "mouse of a man";

g. That same day, Captain Stinson told Plaintiff that he would be placed on overtime shifts with Lt. Brown for a full year and then, in full view of others, mocked Plaintiff by asking, "Are you going to run to the Chief all the time that we have Lt. Brown working with you?"

h. Lt. Brown, Captain Stinson, and/or other members of the Fire Department consistently and repeatedly derided Plaintiff for his opposition to the false, defamatory, and discriminatory actions taken against him;

i. After filing complaint with the Pennsylvania Human Relations Commission, Captain Stinson, who was assigned to write a performance report on Plaintiff, instructed another lieutenant, Lt. Joseph Fyke, who has never supervised Plaintiff, to write the performance review instead; someone then egregiously forged Plaintiff's signature on that report without ever showing it to Plaintiff or providing him a copy of it.[1]

55. At all times material, Lt. Brown, Captain Stinson, and/or other members of the Philadelphia Fire Department were acting within the course and scope of their employment with

---

[1] Plaintiff only learned of the forged Lt. Fyke report when he called the Fire Department's Human Resources office to inquire as to why he had not received a performance evaluation for that period of time. The Human Resources office then told Plaintiff they would investigate the forged report.

the Fire Department and the City when they authored, published, and disseminated the discriminatory performance evaluation of Plaintiff and then harassed and retaliated against Plaintiff for opposing such discriminatory actions.

56. The actions of Defendants, by and through their agents, servants, and employees, including Lt. Brown and Captain Stinson, in subjecting Plaintiff to discrimination and retaliation on the basis of his actual and/or perceived disabilities and/or record of impairment, constituted violations of the ADA, 42 U.S.C. §§ 12112, 12203.

57. As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendants in violation of the ADA, Plaintiff sustained permanent and irreparable harm, including material changes to the conditions and/or opportunities of Plaintiff's employment.

58. As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendants in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, loss of self-esteem, and reputational harm.

59. By reason of Defendants' aforesaid unlawful discriminatory and retaliatory acts, Plaintiff is entitled to all legal and equitable remedies available under the ADA.

**WHEREFORE**, Plaintiff demands judgment against Defendants in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs

### COUNT II
### VIOLATION OF 42 U.S.C. § 1981 AS ENFORCEABLE UNDER § 1983

60. Plaintiff incorporates by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

61. By committing the foregoing acts of discrimination, harassment, and retaliation, Defendants denied Plaintiff the right to the same terms, conditions, privileges, and benefits of their employment agreement with the City of Philadelphia Fire Department, in violation of 42 U.S.C. § 1981.

62. Said violations of 42 U.S.C. § 1981 are actionable against the City of Philadelphia, a municipal entity, pursuant to 42 U.S.C. § 1983.

63. Said violations were done with malice and/or reckless indifference towards the federally protected rights of Plaintiff and their conduct warrants the imposition of punitive damages

64. As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

65. The wrongful acts and conduct of Defendants were done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

## COUNT III
## HOSTILE WORK ENVIRONMENT / HARASSMENT AND RETALIATION

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
## 43 PA.C.S. §§ 951–963

66. Plaintiff incorporates by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

67. Defendant City is an employer and political subdivision subject to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951–963.

68. At all times material, Lt. Brown, Captain Stinson, and/or other members of the Philadelphia Fire Department were acting within the course and scope of their employment with the Fire Department and the City when they authored, published, and disseminated the discriminatory performance evaluation of Plaintiff and then harassed and retaliated against Plaintiff for opposing such discriminatory actions.

69. Defendants, by and through their agents, servants, and employees, including Lt. Brown and Captain Stinson, harassed, bullied, unfairly criticized, tormented, mocked, and took otherwise adverse, discriminatory, and retaliatory actions as described above against Plaintiff because of Plaintiff's disability and for opposing discriminatory behavior towards him.

70. Defendants' actions violated the Pennsylvania Human Relations Act, 43 Pa. Const. Stat. § 955(a).

71. Defendants would not have taken those adverse actions had Plaintiff not been disabled and had not opposed the discrimination and harassment against him.

72. Defendants' harassment of Plaintiff was both severe and pervasive as it lasted for months and continues to this day.

73. Plaintiff, in bringing the damaging, defamatory, discriminatory and untrue performance review to the attention of his supervisors, was opposing practices forbidden by the

PHRA. Plaintiff's report of the discrimination against him is conduct protected by the PHRA. 43 Pa. Cons. Stat. § 955(d).

74. The actions of Defendants, by and through their agents, servants, and employees, including Lt. Brown and Captain Stinson, in subjecting Plaintiff to discrimination and retaliation on the basis of his actual and/or perceived disabilities and/or record of impairment, constituted violations of the PHRA, 43 Pa. Cons. Stat. § 955 .

75. As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendants in violation of the PHRA, Plaintiff sustained permanent and irreparable harm, including material changes to the conditions and/or opportunities of Plaintiff's employment.

76. As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendants in violation of the PHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, loss of self-esteem, and reputational harm.

77. By reason of Defendants' aforesaid unlawful discriminatory and retaliatory acts, Plaintiff is entitled to all legal and equitable remedies available under the PHRA.

78. Plaintiff has satisfied his administrative prerequisites under the PHRA by filing a timely complaint of discrimination, receiving an administrative closure letter, and filing in this Honorable Court within two years of receiving that letter.

**WHEREFORE**, Plaintiff, Perry Lawrynkiewicz, claims of Defendants, jointly and severally, a sum in excess of fifty-thousand dollars ($50,000) in compensatory damages and punitive damages, inclusive of delay damages pursuant to Pa.R.C.P. 238, interest and allowable costs of suit and brings this action to recover same.

## COUNT IV
## VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE
## PHILA. CODE § 9-1100, *et seq.*

79. Plaintiff incorporates by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

80. By committing the foregoing acts of discrimination, harassment, and retaliation against Plaintiff, Defendants have violated the Philadelphia Fair Practices Ordinance ("PFPO"), PHILA CODE § 9-110, *et seq*.

81. Said violations were intentional and willful.

82. As a direct and proximate result of Defendants' violation of the PFPO, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

83. Plaintiff currently suffers and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

84. By reason of Defendants' discrimination and retaliation, Plaintiff is entitled to all legal and equitable remedies available under the PFPO.

**WHEREFORE**, Plaintiff, Perry Lawrynkiewicz, claims of Defendants, jointly and severally, a sum in excess of fifty-thousand dollars ($50,000) in compensatory damages and punitive damages, inclusive of delay damages pursuant to Pa.R.C.P. 238, interest and allowable costs of suit and brings this action to recover same.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

85. Plaintiff incorporates by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

86. Defendants, by and through their contact with Plaintiff, as described above, intentionally committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Plaintiff, which also manifested in physical injuries to Plaintiff as set forth above, in an extreme, outrageous and harmful manner.

**WHEREFORE**, Plaintiff, Perry Lawrynkiewicz, claims of Defendants, jointly and severally, a sum in excess of fifty-thousand dollars ($50,000) in compensatory damages and punitive damages, inclusive of delay damages pursuant to Pa.R.C.P. 238, interest and allowable costs of suit and brings this action to recover same.

**LAFFEY, BUCCI & KENT, LLP**

By: s/ Gaetano D'Andrea
Gaetano D'Andrea, Esq. (Pa ID No. 208905)
Brian D. Kent. Esq. (Pa. ID No. 94221)
Jillian Roth, Esq. (Pa. ID No. 325987)
Michael J. McFarland, Esq. (Pa ID No. 322771)
1100 Ludlow St., Suite 300
Philadelphia, PA
(215) 399-9255
*Attorneys for Plaintiff*

Dated: 09/16/2022